# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES ERIC STEWART, | |
| *Petitioner*, | 2:09-cv-01063-PMP-GWF |
| vs. | ORDER |
| STATE OF NEVADA, *et al.*, | |
| *Respondents*. | |

This habeas matter under 28 U.S.C. § 2254 comes before the Court for a final decision on the merits on the two grounds that remain.

### *Background*

Petitioner Charles Eric Stewart seeks to set aside his October 19, 2006, Nevada state conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon, for the March 20, 2006, murder of James Phillips. Petitioner is serving two consecutive sentences of life with the possibility of parole after ten years on each such sentence. He challenged his conviction on appeal and on state post-conviction review.

### *Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that a decision was incorrect.

131 S.Ct. at 1411.  Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court based on the record presented to the state courts; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  131 S.Ct. at 1398-1401.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result.  *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003).  A decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions.  *Id.*  Indeed, the Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them.  *Id.*  Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous."  540 U.S. at 16.  For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."  *E.g., Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review.  *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly deferential" to state court factual determinations.  *Id*.  The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.  Rather, AEDPA requires substantially more deference to the state court's determination:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Pinholster*, 131 S.Ct. at 1398.

## *Discussion*

### *Ground 2: Sufficiency of the Evidence*

The Court discusses Ground 2 before Ground 1 because the facts considered on the challenge to the sufficiency of the evidence provide background for Ground 1.

In Ground 2, Petitioner alleges that there was insufficient evidence to sustain his conviction for second-degree murder with the use of a deadly weapon.

On direct appeal, the Supreme Court of Nevada summarized the trial evidence and rejected the claim presented to that court on the following grounds:

> Our review of the record reveals sufficient evidence to establish Stewart's guilt beyond a reasonable doubt as determined by a rationale [sic] trier of fact. Here, evidence was admitted that the victim, James Phillips, was going to meet Stewart to collect some money. Phillips entered a car registered in Stewart's name, and he was fatally shot after he exited the vehicle. The gun used in the shooting was observed by a witness [Marquerecus Nelson] to the shooting as being retrieved by the shooter between the driver's and passenger's seat of the vehicle. Stewart was observed immediately after the shooting by another witness [Dr. Yekaterina Khronusova] as being a passenger in the vehicle and throwing the gun out of the vehicle's window. Stewart's fingerprints were lifted from the gun, and the location of his thumbprint was consistent with pointing the gun. Stewart's vehicle was later found with Stewart's fingerprints on both the driver's side and passenger's side of the vehicle. And the vehicle had been wiped with oil, which indicates an attempt was made to remove any fingerprints from it.
>
> Although some of the evidence against Stewart was circumstantial, it is well-settled that "[c]ircumstantial evidence

> alone may sustain a conviction." Moreover, physical evidence, including fingerprints retrieved from the gun, linked Stewart to the murder. We conclude that the above evidence, viewed in a light most favorable to the State,[FN3] was more than sufficient for a reasonable jury to find Stewart guilty beyond a reasonable doubt of second-degree murder with the use of a deadly weapon. Stewart is not entitled to relief on this claim.
>
> [FN3] Because we conclude that the evidence was sufficient to support Stewart's conviction as an aider and abettor, we do not reach whether the evidence was also sufficient to support his conviction as a principal or coconspirator. See Bolden v. State, 121 Nev. 908, 914, 124 P.3d 191, 195 (2005); Sharma v. State, 118 Nev. 648, 652, 56 P.3d 868, 870 (2002); NRS 195.020.

#24, Ex. 12, at 1-2 (additional citation footnotes omitted).

The state supreme court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

At the outset on this claim, Petitioner, who did not file a reply, has not demonstrated by clear and convincing evidence to the contrary in the state court record that the state supreme court's summary of the trial evidence was incorrect. The state high court's summary of the evidence thus is presumed to be correct. *See, e.g., Sims v. Brown,* 425 F.3d 560, 563 n.1 (9th Cir. 2005).

On a challenge to the sufficiency of the evidence, the habeas petitioner faces a "considerable hurdle." *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir. 2003). Under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), the jury's verdict must stand if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *E.g., Davis*, 333 F.3d at 992. Accordingly, the reviewing court, when faced with a record of historical facts that supports conflicting inferences, must presume that the trier of fact resolved any such conflicts in favor of the prosecution and defer to that resolution, even if the resolution by the state court trier of fact of specific conflicts does not affirmatively appear in the record. *Id.* The *Jackson* standard is applied with reference to the substantive elements

of the criminal offense as defined by state law. *E.g., Davis*, 333 F.3d at 992. When the deferential standards of the AEDPA and *Jackson* are applied together, the question for decision on federal habeas review thus becomes one of whether the state supreme court's decision unreasonably applied the *Jackson* standard to the evidence at trial. *See,e.g., Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005). Thus, when a federal court assesses a sufficiency of the evidence challenge to a state conviction under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

Petitioner contends in the Third Amended Petition (#20) that testimony by Marquerecus Nelson that the driver was the shooter and by Dr. Yekaterina Khronusova that she saw Stewart throwing the gun away from the passenger side "contradicted each other." He maintains that "consequently there was insufficient evidence as a matter of law."

Any *arguendo* conflicts in the testimony and evidence presented to the jury do not render the evidence insufficient to sustain the conviction, as a matter of law or otherwise. Rather, under well-established law, the reviewing court must presume that the jury resolved any such conflicts in favor of the prosecution and must defer to that resolution. *E.g., Davis*, 333 F.3d at 992. Petitioner's argument thus is flawed from the outset.

Nelson's testimony in any event does not necessarily conflict with Khronusova's testimony. Nelson testified that he saw the driver shoot Phillips after retrieving the gun from between the driver and passenger seats and then reaching across his body to fire. Khronusova testified that she saw Stewart throw a revolver from the passenger-side window while seated on the passenger side. Testimony that the driver fired the weapon is not in any sense inconsistent with testimony that Stewart thereafter threw a weapon away from the passenger side.

Petitioner's underlying premise for the alleged conflict in the evidence in truth is the proposition that Khronusova's testimony that Stewart was on the passenger side "conflicts" with any attempt to establish that he was the shooter, given Nelson's testimony that the driver was the shooter. Petitioner indeed explicitly argues in the Third Amended Petition that the

evidence was insufficient because there was no testimony or evidence that he was the shooter.

Petitioner misapprehends what the State needed to prove to convict him for second-degree murder with the use of a deadly weapon. Under N.R.S. 195.020, every person concerned in the commission of a crime, whether he directly commits the crime or instead aids and abets in its commission, is guilty as a principal. That means that the person who aids and abets the shooter has the same criminal culpability as the shooter. Both the shooter and the person aiding and abetting the shooter are guilty of the same crime as a principal. Both are guilty in this context of second-degree murder with the use of a deadly weapon.

The Supreme Court of Nevada expressly held in Stewart's case that "the evidence was sufficient to support Stewart's conviction as an aider and abettor." #24, Ex. 12, at 2 n.3. Petitioner presents no persuasive argument establishing that this holding was either contrary to or an unreasonable application of the *Jackson* standard, particularly under the doubly deferential standard of review applicable in this context. Put directly, the State did not have to prove that Stewart was the shooter to prove him guilty of second-degree murder with the use of a deadly weapon. Thus, Nelson's testimony that the driver was the shooter and Khronusova's testimony that Stewart was the passenger – as he sought to get rid of the murder weapon – are entirely consistent not only with one another but also with the jury's finding of guilt in this case.

Moreover, the jury had evidence before it from which it could have reached a quite arguably permissible finding that Stewart in fact was the shooter. Nelson, to be sure, had no doubt in his mind that he saw the driver shoot the revolver and kill Phillips. However, Nelson also testified that the shooter retrieved the weapon from between the driver and passenger seats and fired across the driver's body. #24, Ex. 5, at 96-97 & 103-06.[1] An extraordinarily

---

[1] The murder weapon was a .38 special Smith & Wesson Model 15-2 revolver. As manufactured, the revolver could fire in either single-action mode (*i.e.*, with the firing hammer manually first pulled back and cocked by the shooter prior to pulling the trigger) or in double-action mode (*i.e.*, with each trigger pull both cocking the hammer and releasing it as well as rotating the cylinder to bring the next cartridge into position for
(continued...)

1  clear thumbprint by Stewart further was recovered from the revolver in exactly the position
2  where the thumb would be when firing the weapon. #24, Ex. 6, at 18-30. A reasonable trier
3  of fact quite arguably could find from such evidence that while Nelson believed that what he
4  saw was the driver firing with his right hand across his body what in fact was occurring –
5  consistent with the fingerprint evidence -- was the passenger reaching across the driver's
6  body and shooting Phillips. Jurors do not have to find each facet of the testimony of each one
7  of the State's witnesses to be completely accurate and consistent with all other testimony in
8  the case in order to find guilt. As noted above, in applying the *Jackson* standard, the
9  reviewing court must presume that the jury resolved all such conflicts in favor of the State and
10 must defer to that resolution

11       The state supreme court did not go that far in its analysis, and it had no occasion to
12 do so. The State, again, did not have to prove that Stewart was the shooter to prove him
13 guilty of second-degree murder with the use of a deadly weapon. The state supreme court's
14 holding that the evidence was sufficient to find Stewart guilty as an aider and abettor was not
15 an objectively unreasonable application of the *Jackson* standard.

16       Petitioner urges that Nelson never identified him as either the driver or the passenger
17 in the car. The State's case did not ride, however, on just the testimony of Nelson.
18 Khronusova's testimony placed Stewart in the car, and unequivocal fingerprint evidence
19 placed his hand on the murder weapon that he tossed from the vehicle.

20       Petitioner maintains that Khronusova was allowed to change her initial statement and
21 her preliminary hearing testimony as to how certain she was about what she saw and about
22 specifically what she saw. He further maintains that, even at trial, she was only fifty percent

---

[1](...continued)
firing). Replacement grips on this particular revolver, however, prevented it from firing in single-action mode. It thus could be fired only in double-action mode. Only 3 to 6 pounds of trigger pull would have been required to fire the revolver in single-action mode. In double-action mode, however, 10 to 10-3/4 pounds of trigger pull was required to fire each successive shot. #24, Ex. 6, at 9-11. Nelson testified that the shooter fired four "deliberate" shots at Phillips. #24, Ex. 5, at 94-95. This testimony was consistent with the higher amount of trigger pull required for this particular revolver firing only in double-action mode and the relatively slow rate of fire (as compared to a semi-automatic pistol) for a revolver firing in such double-action mode.

1  sure that it was Stewart that she saw toss the murder weapon from the vehicle.  Both
2  Khronusova's prior statements and her level of certainty at trial – which was more than rather
3  than equal to fifty percent – were fully explored during cross-examination.  See #24, Ex. 5,
4  at 117-38.  Once again, it is the province of the jury to weigh and resolve such inconsistencies
5  and degrees of certainty in witness testimony in the context of the remaining evidence –
6  including in this case forensic evidence of Stewart's clear thumbprint on the murder weapon
7  that the passenger tossed from the vehicle right after the shooting.

8  Lastly, Stewart maintains that the foregoing evidence coupled with the alleged
9  prosecutorial misconduct discussed *infra* as to Ground 1 mandates a new trial.  Petitioner
10 again misapprehends the nature of the issue when the sufficiency of the evidence is
11 challenged on federal habeas review.  First, the reviewing court does not weigh the evidence
12 along with other alleged errors to determine whether the conviction should be reversed.
13 Rather, the reviewing court looks only to whether the evidence actually introduced at trial was
14 sufficient to convict, without regard to the presence or absence of other alleged errors.  *Cf.*
15 *McDaniel v. Brown*, 558 U.S. 120 (2010)(*Jackson* review turns solely upon whether all of the
16 evidence admitted was sufficient to convict, not upon whether some evidence should have
17 been excluded at trial due to other alleged errors).  Second, a federal habeas court does not
18 reweigh the evidence on *Jackson* review to determine whether a new trial should be ordered.
19 Petitioner can obtain relief on federal habeas review in this context only if the evidence was
20 insufficient to sustain the conviction.  If the evidence was insufficient, acquittal rather than a
21 new trial is required.  If the evidence instead was sufficient, the petitioner then is entitled to
22 no relief on the claim.  There is no intermediate circumstance where the federal habeas court
23 grants a new trial on a claim challenging the sufficiency of the evidence.

24 In the present case, the state supreme court's holding that the evidence was sufficient
25 to sustain Stewart's conviction for second-degree murder with the use of a deadly weapon
26 was neither contrary to nor an unreasonable application of *Jackson*, particularly under the
27 doubly deferential review applicable in this context under AEDPA.

28 Ground 2 therefore does not provide a basis for federal habeas relief.

-8-

***Ground 1***

In Ground 1, Petitioner alleges that he was denied due process in violation of the Fifth Amendment when the prosecutor engaged in prosecutorial misconduct by allegedly ignoring a trial court ruling and referring to Stewart by his moniker "No Good."

At the beginning of the trial, Petitioner made an oral motion to preclude the State from referring to his "No Good" alias. This motion led to the following discussion and ruling:

> MR. DENUE: And the other motion I would make, Judge, in limine is to preclude the State from referencing my client by his alleged moniker, No Good.
>
> MR. BARKER: Judge, our response to that is, the first witness, Ms. Crawford, who is the wife of the deceased, knows this man only as No Good. He has referenced that, he's referred to himself in the first person. That's the name he uses, that's the name that appears on the cell phone that was used to communicate with him prior to the drug deal that resulted in this murder. As a consequence of that identification, we would ask to be permitted to allow the witnesses to refer to him on how they know this man and that is No Good.
>
> THE COURT: Well, I think that that's all the witnesses can do. I'm going to grant the motion to a limited extent. I'm not going to allow the prosecutor's [sic] to call him that, I don't want the police to call him that; except in the context if they have to say: Does he have a moniker to put it together. The people on the street that know him as that are going to have to refer to him the way they know him, and so we'll try to kept it to a minimum, but the people will have to identify him. And it certainly ties in with the phone thing so –
>
> MR. BARKER: Yes.
>
> THE COURT: – we'll keep it to a minimum. . . . .

#24, Ex. 5, at 2-3.

The Supreme Court of Nevada rejected the claim presented to that court on the following grounds:

> Stewart also contends that the prosecutor committed reversible misconduct by violating a district court order and repeatedly referring to Stewart during trial by his moniker "No Good." We disagree. On the morning of the trial, Stewart moved the district court to preclude the prosecutor's use of his moniker "No Good" during trial. The district court later ruled:
>
> I'm going to grant the motion to a limited

> extent. I'm not going to allow the prosecutor's [sic] to call him that, I don't want the police to call him that; except in the context if they have to say: Does he have a moniker to put it together. The people on the street that know him as that are going to have to refer to him the way they know him, and so we'll try to kept it to a minimum, but the people will have to identify him the way they know him.
>
> At trial, Phillip's girlfriend, Shannon Crawford, testified that she only knew of Stewart by his moniker, and she did not know his real name. Crawford and the prosecutor referred to Stewart as "No Good" a total of seven times during Crawford's testimony. Additionally, while describing the course of the investigation, LVMPD Detective Tod Williams explained that Stewart was known by the moniker "No Good," which was tattooed on his left shoulder. Detective Williams also recounted statements made by Crawford that referred to a man she knew as "No Good." Detective Williams and the prosecutor referred to Stewart as "No Good" a total of four times.
>
> We conclude that the references to Stewart as "No Good" by Crawford, Detective Williams, and the prosecutor generally occurred within the limits of the district court's pretrial order.
>
> Given the strength of the evidence supporting Stewart's conviction, we conclude that any prejudice that resulted from the use of his moniker was harmless. Stewart is not entitled to relief on this basis. . . . .

#24, Ex. 12, at 1-2 (additional citation footnotes omitted).

Petitioner, who has the burden both of proof and persuasion on federal habeas review, has not identified any references to his "No Good" moniker in addition to those summarized by the Supreme Court of Nevada. He has not demonstrated by clear and convincing evidence that the state supreme court's recital of the relevant evidence otherwise is incorrect. The state high court's summary therefore is entitled to a presumption of correctness.

Against the foregoing factual backdrop, the state supreme court's implicit rejection of Petitioner's due process claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

On federal habeas review of a state court conviction for constitutional error, the standard of review for a claim of prosecutorial misconduct, is "'the narrow one of due process, and not the broad exercise of supervisory power'" applied in federal criminal trials. *See, e.g., Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S.

1  637, 642 (1974)). "The relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 643).

On deferential AEDPA review, state courts have considerable leeway in applying a broad principle of due process framed in such generality. As the Supreme Court observed in *Harrington v. Richter*, 131 S.Ct. 770 (2011):

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* . . . .

131 S.Ct. at 786.

In the present case, the Court is not persuaded by Petitioner's bare and conclusory argument that the prosecutor violated the trial court's ruling in a manner that so infected the trial with unfairness as to deny him due process. Petitioner in essence merely has made a formulaic recital of the elements of the cause of action without significant specific factual enhancement, as he makes only a conclusory underlying factual argument.

Petitioner urges that prejudice is clear because the evidence against him was not overwhelming. The state supreme court did not state that the evidence was overwhelming but instead referred to the strength of the evidence against Petitioner. In light of the evidence canvassed in the discussion of Ground 2, a determination that if any improper references occurred any such error was harmless was neither contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Petitioner again proceeds on the erroneous assumption – discussed with regard to Ground 2 *supra* – that the evidence had to establish that he was the shooter for him to be found guilty of second-degree murder with the use of a deadly weapon. Petitioner only had to be found to have aided and abetted the shooter to be found guilty of the offense.

Ground 1 therefore does not provide a basis for federal habeas relief.

1       IT THEREFORE IS ORDERED that all remaining claims in the Petition are DENIED on the merits and that this action shall be DISMISSED with prejudice.

      IT FURTHER IS ORDERED that a certificate of appealability is DENIED, as jurists of reason would not find the district court's rejection of the claims presented to be debatable or wrong, for the reasons assigned herein. Ground 2 is discussed before Ground 1 herein.

      The Clerk of the Court shall enter final judgment accordingly in favor of Respondents and against Petitioner, dismissing this action with prejudice.

      DATED: February 19, 2013.

_____
PHILIP M. PRO
United States District Judge